**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| In re:<br><br>THOMAS TUCK ZARUBA,<br><br>                    Debtor. | Case No. 07-00100-DMD<br>Chapter 7 |
| In re:<br><br>KOMA EQUIPMENT LEASING COMPANY, LLC,<br><br>                    Debtor. | Case No. 07-00101-DMD<br>Chapter 7 |
| In re:<br><br>KOMA SALES COMPANY, LLC,<br><br>                    Debtor. | Case No. 07-00103-DMD<br>Chapter 7<br><br>**Filed On**<br>**5/21/10** |

**MEMORANDUM ON ATTORNEY'S FEES**

      Cabot Christianson, attorney for the debtors, seeks allowance of $107,883.13 in chapter 11 fees and chapter 11 costs of $4,088.12. He also seeks allowance of $5,220.00 in chapter 7 fees, incurred as special counsel to the trustee. Mr. Christianson was previously awarded $56,603.24 in fees and costs. For the reasons stated below, Mr. Christianson's application will be allowed, with the exception of $196.38 in computerized legal research charges.

Case Background

This case has had a long and tortured history. Huna Totem Corporation ("HTC") is an Alaska native corporation formed under ANCSA. It is located in Hoonah, Alaska, on an island east of Juneau. Zaruba, a resident of Juneau, met with representatives of HTC in 1999 to discuss development of a cruise ship port in Hoonah. They agreed to establish a port. Zaruba, through two limited liability companies that he controlled, Koma Equipment Leasing and Koma Sales Company, participated in developing the port at Hoonah. Zaruba ran the venture, known as the Point Sophia Development Company ("PSDC"). Through his company Koma Sales, Zaruba owned 51% of PSDC; HTC owned the remaining 49%. While the venture had its first cruise ship stop at the port in 2004, revenues from the project were substantially less than the parties anticipated.

HTC lost confidence in Zaruba. In September, 2004, it agreed to buy 30% of his interest in PSDC for $1.2 million and take over management of the venture. After the sale, HTC reviewed the project's financial records and concluded that Zaruba and his related entities had overcharged the venture for certain leased assets. Zaruba disagreed. The parties entered into a nine day arbitration in 2006. The arbitrator ruled in favor of HTC and against Zaruba for the sum of $388,000.00. Zaruba sought relief from the arbitrator's award in state superior court. On January 26, 2007, the superior court confirmed the arbitration award. Zaruba appealed. He sought a stay pending appeal, which was denied by the superior court. His request for a stay of execution was also denied. Zaruba and his two related corporations filed for chapter 11 relief on March 7, 2007.

The chapter 11 cases have been vigorously litigated by both sides. The debtors filed their first plan and disclosure statement on October 1, 2007.[1] The debtors proposed creating a trust for the benefit of HTC, with the assets to be liquidated after HTC's claim had become a final judgment, no longer subject to appeal. The trust was to consist of various boats and buses, and Zaruba's interest in real property and another vessel. Zaruba's non-debtor spouse was also to contribute her interest in the real property to the plan. Exhibit "E" to the disclosure statement indicated that Zaruba would contribute exempt property, consisting of an IRA with a value of $60,000.00, to the plan upon confirmation. The IRA was to be applied toward chapter 11 administrative expenses.

HTC filed a motion to dismiss or convert in all three cases. After several continuances, this motion was heard on December 19, 2007. An order denying the motion was entered on December 28, 2007. In a memorandum accompanying the order, I stated:

> HTC has not shown that there has been substantial loss to or diminution of the estate at this point. While the debtors' attorney's fees are sizeable, Zaruba is proposing to pay the majority of those fees with his IRA, an exempt asset not subject to levy by HTC in any event. There is no allegation that the debtors' assets are deteriorating beyond normal wear and tear, or that they lack proper care or any required insurance. And HTC's complaints regarding gross overvaluation of assets and faulty cash projections by the debtors are more appropriately considered in the

---

[1] Disclosure Statement, filed Oct. 1, 2007 (Docket No. 87); Chapter 11 Plan of Reorganization, filed Oct. 1, 2007 ( Docket No. 88). All references to the plans, disclosure statements and other pleadings and orders herein are to those filed in *In re Zaruba*, Main Case No. J07-00100-DMD, unless otherwise indicated. While these cases were not jointly administered, they were so closely related that substantially identical plans and disclosure statements were filed in each, and the *Zaruba* case was treated in most instances as the lead case.

3

> confirmation context. I cannot conclude, based on the record before me today, and particularly in light of the varying asset valuations provided by the parties, that there is an absence of a reasonable likelihood of rehabilitation in this case.[2]

Amended disclosure statements and plans were filed by the debtors on December 31, 2007. Zaruba's exempt IRA was taken off the table as a contribution to the plan, but three additional sources of revenue were offered instead: a 2006 tax refund of $4,612.00 and a tax carryback of $35,966.00, and revenue from the sale of a boathouse, to be received in January of 2008.[3] In fact, a motion to sell the boathouse for $33,000.00 was pending at the time the amended disclosure statements and plans were filed; it was subsequently granted on January 18, 2008.[4] The amended disclosure statement also stated that Zaruba's non-debtor spouse would contribute her equity in certain real property to the plan.[5]

Christianson filed his first interim fee application on December 26, 2007.[6] He requested an award of $82,827.50 in fees and $2,765.36 in costs. The amended disclosure statement, filed five days later, anticipated an additional $50,000.00 in attorney's fees,

---

[2] Mem. on HTC's Mot. for Dismissal or Conversion, entered Dec. 28, 2007 (Docket No. 128) at 12.

[3] Amended Disclosure Statement, filed Dec. 31, 2007 (Docket No. 132), at 11.

[4] Order Granting Debtor's Request to Sell Boathouse, entered Jan. 18, 2008 (Docket No. 141).

[5] Amended Disclosure Statement (Docket No. 132), at 6-7.

[6] Debtor's Attorney's First Application for Payment of Fees and Costs, filed Dec. 26, 2007 (Docket No. 125).

divided equally between services through confirmation and fees for the state court appeal.[7] The total for all fees through confirmation, net of retainer and including the fees requested in the first interim fee application, was estimated at $115,593.00.[8] HTC objected to the fee application, arguing that the estates had limited assets and it was inappropriate to apply these assets to pay for work which HTC contended benefitted only the debtor.[9] HTC argued that a substantial portion of the fees were incurred to perpetuate the dispute between it and the debtors, rather than reorganize. The parties stipulated to an interim allowance of 65% of the requested fees, or $53,837.88, and full costs, on January 31, 2008.[10] Allowance of the balance of the fees was reserved pending further hearing. This 35% "holdback" amount is included in Mr. Christianson's pending, final fee application.

A combined hearing on the amended disclosure statements and plans was held in Juneau on February 5th and 6th of 2008. On March 11, 2008, an order was entered denying approval of the disclosure statements and confirmation of the debtors' plans. HTC filed a second motion to convert just nine days later, on March 20, 2008. Conversion was delayed to give Zaruba time to negotiate with Royal Caribbean Cruise Lines for a sale of his

---

[7] Amended Disclosure Statement (Docket No. 132), at 10-11.

[8] *Id.*

[9] Obj. to Application of Debtors' Attorney for Attorneys' Fees and Costs, filed Jan. 11, 2008 (Docket No. 136), at 2.

[10] Interim Order on Debtor's Application for Payment of Fees and Costs, entered Jan. 31, 2008 (Docket No. 146).

5

remaining 21% interest in PSDC. Royal Caribbean lost interest in the purchase, however, and the debtors' cases were finally converted to chapter 7 on May 20, 2008.

During the pendency of this case under chapter 11, the debtors continued to prosecute the appeal of the arbitrator's and district court's rulings. Christianson filed a 53 page opening brief with the Alaska Supreme Court seeking to overturn the arbitrator's ruling. Following conversion of the case, the chapter 7 trustee, Larry Compton, opted to continue the appeal and hired Christianson as special counsel to file a reply brief. Compton subsequently entered into a compromise with HTC whereby debtor Koma Equipment's interest in certain buses, along with the estate's remaining 21% interest in PSDC, would be transferred to HTC and the debtors' appeal would be dismissed. The estate was to receive $205,873.92 from HTC under the compromise. After some initial objections by Zaruba, the settlement was approved by the court on April 21, 2009.[11]

Christianson filed his final fee application on October 29, 2009,[12] and a supplement to the application on March 25, 2010.[13] HTC filed its objection to this application on April 16, 2010.[14] It argues that these chapter 11 cases were doomed from the

---

[11] Order Approving Sale Free and Clear of Liens and Authorizing Settlement, entered Apr. 21, 2009 (Docket No. 281).

[12] Debtor's Attorney's Second and Final Application for Payment of Chapter 11 Fees and Costs; and for Chapter 7 Fees as Special Counsel to Trustee, filed Oct. 29, 2009 (Docket No. 309).

[13] Supplement to Debtor's Attorney's Second and Final Application, filed Mar. 25, 2010 (Docket No. 322).

[14] HTC's Obj. to the Final Fee Applications of Christianson & Spraker, filed Apr. 16, 2010 (Docket No. 324).

6

outset and the expenditure of additional fees and costs in this case subsequent to the first interim application are "legitimately questionable."[15]

Discussion

Christianson, with the stipulation of HTC, obtained an order allowing interim fees of $53,837.88 and costs of $2,756.36.[16] I deferred ruling on the balance of the fees requested in the first interim application, $28,989.63. Christianson now seeks additional fees of $78,893.50 and costs of $4,088.12. He also seeks chapter 7 fees of $5,220.00. Further, $11,603.24 remains unpaid from the prior allowed fees. The total for all outstanding fees is $119,486.37.

In its opposition to the pending fee application, HTC argues that the debtors had unrealistic expectations as to confirmation and with regard to the prospective sale of the 21% interest in PSDC to Royal Caribbean. HTC also contends the debtors had little chance of success on appeal. HTC specifically objects to: (1) any award of compensation for the state court appeal, (2) any award for services which it contends benefitted Zaruba personally, (3) any award for services which did not benefit the estate, (4) an allowance for costs associated with computerized legal research, and (5) an award for paralegal services which HTC says were instead secretarial or clerical functions. HTC also objected to costs for

---

[15] *Id.* at 2.

[16] Interim Order on Debtor's Application for Payment of Fees and Costs (Docket No. 146).

7

printing and binding, which it said were excessive; however, it withdrew this objection at the hearing. Each item will be reviewed independently.

Compensation of attorneys and other officers of the court is governed by 11 U.S.C. § 330, which authorizes a court to award "reasonable compensation for actual, necessary services rendered by the . . . attorney" and "reimbursement for actual, necessary expenses."[17] To determine a reasonable fee allowance under § 330, the court should answer the following questions:

> First, were the services authorized? Second, were the services necessary or beneficial to the administration of the estate at the time they were rendered? Third, are the services adequately documented? Fourth, are the fees requested reasonable, taking into consideration the factors set forth in § 330(a)(3)? Finally, [did] the professional exercise[ ] reasonable billing judgment[?].[18]

Here, Mr. Christianson's services as the debtors' chapter 11 counsel and as special counsel to the chapter 7 trustee were authorized. I also find that the services were adequately documented in both the interim and final fee applications. The second and fourth factors are the ones most determinative here: were the services provided by Mr. Christianson necessary or beneficial to the administration of the estate at the time they were rendered, and are the fees requested reasonable?

---

[17] 11 U.S.C. § 330(a)(1).

[18] *Leichty v. Neary (In re Strand)*, 375 F.3d 854, 860 (9th Cir. 2004), *citing Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re MEDNET, MPC Corp.)*, 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000).

To determine reasonableness, the court is to consider the factors found in § 330(a)(3), which include:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[19]

Factors B, D and E are readily satisfied here. Mr. Christianson is one of the most experienced bankruptcy practitioners in this state. His hourly rate is comparable to that charged by other attorneys with similar experience. His services were performed expediently. The objections raised by HTC hinge upon the remaining factors. Was too much time spent on certain services? Were they necessary and beneficial to the estate at the time they were rendered? Is the requested compensation reasonable based upon what professionals

---

[19] 11 U.S.C. § 330(a)(3).

9

in non-bankruptcy cases would customarily charge? Did certain services only benefit Zaruba personally, rather than the estate? Services rendered solely for the benefit of a debtor and not the estate are not compensable.[20]

These questions cannot be answered simply by looking at the ultimate dollar amount Mr. Christianson has requested. Fees for chapter 11 work frequently exceed $100,000.00, even in cases which are not as hotly contested as these have been. Further, there were legitimate disputes between HTC and the debtors regarding the valuation of many assets. Litigating these disputes resulted in attorneys fees to both parties. Under the circumstances, I cannot adopt HTC's broad-stroke argument that too much time was billed in these cases. Instead, the more specific objections of HTC must be addressed.

HTC says all fees incurred for working on the state court appeal should be denied. The current fee application seeks $22,336.00 for preparing and filing a brief on appeal. HTC argues that work on this brief did not benefit the estates because the debtors' chances of prevailing on appeal were slim. HTC also contends the time billed for the appeal should be disallowed because the services are excessive and unreasonable, and are itemized in general terms. It is true that Mr. Christianson's fee itemization for these services is terse, with several entries showing between 2 to 10 hours of time for "work on brief."[21] However, Mr. Christianson has responded to this portion of HTC's objection by providing a copy of his 53 page appellate brief. The brief was excellently prepared and presented in accordance

---

[20] *In re Reed,* 890 F.2d 104 (8th Cir. 1989).

[21] Debtor's Attorney's Second and Final Application (Docket No. 309), Ex. A at 6.

10

with the highest standards of the legal profession. It was well worth the fees presented by Mr. Christianson. The fees are also within the range of fees that would be charged for such work by other attorneys.

Did the prosecution of the appeal benefit the estate? I think it did. It kept the litigation alive and allowed the trustee the opportunity to settle the litigation for about $205,000.00, although that settlement also involved the sale of some buses and the debtor's interest in PSDC.[22] The fees requested for preparing the appeal brief, and for the reply brief prepared by Mr. Christianson as special counsel for the trustee, will be allowed without deduction.

HTC argues, generally, that Mr. Christianson provided services to benefit Zaruba personally rather than the bankruptcy estate. It points to the fact that Zaruba's plan was never confirmed and takes great umbrage with the fact that Zaruba ultimately did not offer his exempt IRA to fund the plan. After reviewing the pleadings, I do not believe that Christianson was engaging in sharp practices respecting Zaruba's contribution to the plan. He amended the disclosure statement to reflect his view that there were sufficient assets to fund the plan, independent of the IRA. Zaruba's non-debtor spouse had also offered her

---

[22] HTC has repeatedly argued that Zaruba's remaining interest in PSDC had no value to the estate and that Zaruba had no chance of success on appeal. It is true that the debtors' disclosure statements and plans placed a minimal value on the remaining 21% interest in PSDC. However, HTC paid Zaruba more than $1 million for a 30% interest in PSDC in 2004. Given the ongoing, heated litigation between the two parties that ensued after this sale, it is not surprising that Zaruba gave little value to the remaining 21% interest in the plans. Further, a review of the opening brief submitted by Mr. Christianson indicates that there were significant issues with the arbitration which may have been successfully challenged on appeal.

11

interest in real property to the plan. There was no intentional misrepresentation by Zaruba or Christianson. No punitive fee cutting is warranted under these circumstances.

HTC next points to several fee entries to support its contention that services were rendered that benefitted Zaruba personally rather than the estate. HTC singles out billing entries for 3/13/08 through 3/31/08 under "General Work" which it says "demonstrate that [Christianson's] efforts were to establish what options were best for Zaruba personally."[23] These entries describe phone calls between Christianson and HTC's attorney after confirmation of the debtors' amended plans was denied. They indicate that Christianson invited HTC to make a settlement offer, since it hadn't done so since inception of bankruptcy. Christianson then discussed an offer made by HTC with Zaruba, and reviewed Zaruba's options with him. One fee itemization, for March 14, 2008, stated that HTC's offer "is much worse for [Zaruba] than conversion to Chapter 7."[24] HTC's settlement proposal was rejected and a counteroffer was proposed by Zaruba, which was in turn rejected.

Considering that these services were provided after the court had denied confirmation, I don't find that they benefitted only Zaruba. It was entirely reasonable for Mr. Christianson to counsel the debtors regarding their options at that point in the case. It was also reasonable to make a stab at settlement with HTC. Given the acrimony between HTC and Zaruba, which started long before these bankruptcy cases were filed, it is not surprising

---

[23] HTC's Obj. to Final Fee Application (Docket No. 324), at 5-6.

[24] Debtor's Attorney's Second and Final Application (Docket No. 309), Ex. A at 2.

12

that a settlement was not reached. However, I feel that to deny these particular fees would discourage parties from exploring settlement and attorneys from adequately advising their clients on all options available to them under such circumstances. These fees will be allowed.

HTC next singles out fee entries under "Plan and Disclosure Statement" dated 12/06/07, 12/10/07, 12/12/07, 2/26/08, 2/29/08. HTC argues these fees were incurred in an attempt to let Zaruba keep his Corvette and his interest in his mother's home and a truck. I disagree with this characterization of the services. They were provided as general services in prosecution of the plan and disclosure statement. Nor were they an attempt to keep Zaruba's mother's house or the Corvette; both items were being contributed to the plan. These fee entries will be allowed.

HTC's next contention is that certain services Christianson provided did not benefit the estate. It points to the $12,930.00 in fees which Christianson incurred seeking to sell Zaruba's 21% interest in PSDC to Royal Caribbean. It says this deal was clearly a long shot which should not have been pursued. HTC fails to mention that Zaruba had received an e-mail message from Royal Caribbean expressing an interest in this purchase, and suggesting a price in the $450,000 to $500,000 range. What if Zaruba had not pursued this possibility? Would HTC instead be arguing that he had missed a valuable opportunity? Further, a review of the time entries under this category shows that many hours were billed for matters other than dealing with the prospective sale of the 21% interest, including preparing an opposition to HTC's second motion to convert and attending the hearing on that

13

motion. Christianson also compiled substantial financial information for Royal Caribbean, which he requested and received from HTC. Royal Caribbean ultimately decided not to make an offer for the 21% interest. However, the standard for determining whether fees are reasonable is whether they benefitted the estate at the time they were rendered. Ultimate success is not required. HTC paid Zaruba substantial sums for a 30% interest in PSDC before these bankruptcy cases were filed. Conveyance of Zaruba's remaining 21% interest to HTC was part of the $205,000.00 settlement the trustee reached with HTC after this case converted. Looking at this objectively, rather than from HTC's standpoint, I cannot conclude that the fees incurred to assist Zaruba in pursuing the Royal Caribbean prospect had no benefit to the estate at the time they were provided. These fees will be allowed.

HTC objects to $840.00 in charges under "General Work" for time spent on preparing a charter agreement relating to buses and boats. It points out that this motion was never filed, and says it lacks merit. Christianson responds that this work involved two e-mails sent to HTC's counsel for information regarding the bus and boat leases, and the preparation of a motion to compel after HTC failed to respond. Christianson explains that the motion was never filed because the issues involved became moot after the court denied confirmation of the debtors' plans. Denial of confirmation occurred the day after the last billing entry for this work. Viewing Mr. Christianson's explanation regarding these services, I conclude they were reasonable at the time they were provided. They involved necessary information with regard to a pending plan. These fees will be allowed.

14

HTC objects to Christianson's computerized legal research charges, arguing that these charges should be included as office overhead. HTC cites *In re Chugach Alaska Corp.*, 3 A.B.R. 49, 54 (Bankr. D. Alaska 1992) in support of this position. This court has more recently stated, in a case in which HTC's counsel is involved,[25] that such charges are allowable expenses under 11 U.S.C. § 330(a) provided the applicant establishes that such charges "were reasonable and necessary (which necessarily includes a description of the research topic and the length of time spent on each topic)."[26] Mr. Christianson has requested reimbursement for $196.38 in computerized legal research charges. This charge will be disallowed, unless Mr. Christianson files a supplement to his fee application with information to show that such computerized research charges were reasonable and necessary, as discussed above.

Finally, HTC seeks disallowance of certain fees charged for paralegal Margaret Stroble, arguing that these services were primarily clerical in nature. Ms. Stroble's fees total $911.25, for miscellaneous entries in December, January, February, April and May of 2008. The services provided were the preparation of the debtors' required monthly operating reports. I disagree that these were clerical services. The preparation of monthly operating reports is an appropriate para-professional activity. No deduction for them is warranted.

---

[25] *See* Order on Application for Attorney Compensation, entered Oct. 30, 2009 (Docket No. 113), in *In re Salmon Falls Resort, LLC*, Main Case No. K09-00301-DMD.

[26] *In re Fibermark, Inc.*, 349 B.R. 385, 400 (Bankr. D. Vt. 2006).

15

As noted above, HTC initially objected to the costs of binding the debtor's amended plan and disclosure statement. Those objections were subsequently withdrawn. These costs will be allowed.

For the foregoing reasons, Mr. Christianson's second and final application for payment of chapter 11 fees and costs will be granted, with one adjustment. The requested charges for computerized legal research, in the sum of $196.38, are disallowed. The court will reconsider allowance of these charges if Mr. Christianson supplements his application with information to show that such computerized research charges were reasonable and necessary.

Orders and judgments will be entered consistent with this memorandum.

DATED: May 20, 2010.

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:    C. Christianson, Esq.
D. Bruce, Esq.
L. Compton, Trustee
U.S. Trustee
5/21/10